UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER J. KASER,

        Plaintiff,        Case No. 1:13-cv-574

v.        Honorable Janet T. Neff

ANTHONY KING et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim and/or because Defendants are immune from Plaintiff's damages claim.

**Factual Allegations**

Plaintiff Christopher J. Kaser is a state prisoner incarcerated by the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF). The events giving rise to the complaint occurred while he was housed at DRF and at the Earnest C. Brooks Correctional Facility (LRF). He sues the following employees of the MDOC: Parole Board Members Anthony King and Amy M. Bonito; DRF Warden Willie Smith and three unknown staff members at DRF ("Unknown Parties"); Assistant Resident Unit Supervisor (ARUS) (unknown) Irby; and Program Coordinator D. Johnson.[1]

According to the complaint, in May 2012, while Plaintiff was incarcerated at the Muskegon Temporary Facility, he learned that he was scheduled to receive a parole hearing on July 26, 2012. On June 6, 2012, for reasons unknown to Plaintiff, he was transferred to LRF, to a higher level of security. He contacted ARUS Irby to find out the reason for his placement in a higher security level. Irby was unable to respond.

On the morning of June 25, 2012, Plaintiff was placed on a callout for a violence prevention program (VPP) run by Defendant Johnson. Plaintiff went to the program and informed Johnson that he had not received a recommendation from the MDOC's Reception Guidance Center (RGC) to attend a program for violent offenders. Johnson informed Plaintiff that the VPP was a new program, and he was required to participate regardless of his classification or programming recommendations. Plaintiff asked her for evidence that he was required to take the program, but she could not provide any.

---

[1] Defendants Irby and Johnson are located at LRF.

Later that afternoon, Defendant Irby informed Plaintiff that he was scheduled to see the parole board that afternoon, and that he would have to sign a statement waiving his right to 30-day advance notice of the parole hearing. Plaintiff refused to sign the waiver because he was concerned that his current security classification and the requirement that he participate in the VPP would reduce his chances of parole. In response, Irby stated, "You want to refuse to see the Parole Board, that's on you." (Compl., docket #1, Page ID#4.) Plaintiff stated that he was not refusing to see the parole board; he was refusing to waive his right to advance notice. Irby told Plaintiff, "Get the fuck out, you refused to see 'em." (*Id.*)

On June 26, 2012, Plaintiff was called out to attend the VPP, but he refused to attend. The next day, Plaintiff went to the VPP and showed his RGC and classification papers to Defendant Johnson. She stated, "It does not matter, you['re] in my class. Sign." (*Id.*) Plaintiff refused to consent to participation in the program.

Plaintiff alleges that participation in the VPP would have required his attendance for three hours a day, five days a week, for five months. Also, it would have required him to remain in a higher level of security, reducing his chances for parole. In addition, it would have caused him to be considered a violent offender, further reducing his likelihood of release on parole.[2] Plaintiff also contends that it is a "medical program" requiring release of his medical records, and that it results in the tracking of offenders after completion of the program. (*Id.*)

On June 28, 2012, Plaintiff again told Johnson that he would not participate in the VPP. She told him, "I will make sure you're flopped for refusing my program." (*Id.*) According to Plaintiff, "'flopped' is a term used to describe being passed over for parole." (*Id.*) Johnson later

---

[2]Plaintiff asserts that he has not been designated as a violent offender, and he is not serving a sentence for a violent offense. (Compl., docket #1, Page ID#4.)

completed four prisoner program evaluations regarding Plaintiff,[3] one for each of the four days that he refused to participate in the VPP. Plaintiff implies that it was improper for her to complete the program evaluations because he never participated in the program.

On June 30, 2012, Plaintiff was transferred to Pugsley Correctional Facility (MPF), to the lowest level of security. He did not receive the parole hearing that had been scheduled for July. Instead, in November 2012, he received notice that the parole board had denied him parole. The parole board's decision "included" the program evaluations prepared by Defendant Johnson. (*Id.* at Page ID#5.)

Sometime later, Plaintiff retained counsel to assist him in filing a state petition for a writ of habeas corpus concerning the parole board's decision to deny parole. In December 2012, Plaintiff was transferred to DRF. Plaintiff informed his attorney of the transfer, because it would impact the venue for his proposed writ of habeas corpus. On April 12, 2013, Plaintiff received a letter from his attorney regarding proposed changes to the writ. On April 24, 2013, Plaintiff received a visit from his attorney. An unknown officer and sergeant refused to let Plaintiff take his legal documents with him to the meeting. A third staff member told Plaintiff that he needed the warden's approval before bringing items to a visit. As a result, Plaintiff was forced to meet with his attorney without the relevant documents for their meeting.

Based on the foregoing, Plaintiff claims that Defendants King and Bonito denied him parole without a hearing, in violation of his right to due process. Plaintiff seeks damages against them in their official capacities.

---

[3] Plaintiff refers to the evaluations as "363's." (Compl., docket #1, Page ID#4.) According to MDOC policy, prisoners assigned to work or school or placed in recommended programs are evaluated using the "Prisoner Program and Work Assignment Evaluation (CSJ-363)." MDOC Policy Directive 05.01.100 ¶¶ I, EE (effective May 30, 2011).

Plaintiff seeks damages against Defendant Johnson in her personal capacity because she required him to attend a "non-recommended program" and she "falsified" documents to "interfere" with his parole process. (Compl., docket #1, Page ID#6.)

Plaintiff also seeks damages against Defendant Irby in her personal capacity because she failed to schedule a parole interview in accordance with MDOC policy.

Plaintiff seeks damages against Warden Smith in his official capacity because he failed to ensure that "his staff follow the policies of the [MDOC]." (*Id.*)

Finally, Plaintiff seeks damages against the three unknown officers at DRF (Unknown Parties) in their personal capacities because they did not follow MDOC policies regarding attorney visits.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although

the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liability

Plaintiff fails to make specific factual allegations against Warden Smith, other than his assertion that Smith failed to properly supervise the conduct of his subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Smith engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against him.

### B. Due Process

Plaintiff claims that Defendants King and Bonito violated his right to due process by denying him parole without affording him a hearing. To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an

inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393 (6th Cir. 2011), holding that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.* at 404; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. Consequently, Defendants' failure to provide a parole hearing implicates no federal right. In the absence of a protected liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

Similarly, Plaintiff does not state a constitutional claim against Defendants Irby for failing to schedule a parole hearing, or against Defendant Johnson for requiring Plaintiff to participate in a program that could impact his parole eligibility or for making statements to the

parole board that impacted its decision. Because Plaintiff is not constitutionally entitled to parole or to a parole hearing, their actions did not violate his constitutional rights.

Finally, to the extent that Plaintiff objects to being placed in a higher level of security in connection with the VPP, he does not state a claim because the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). Consequently, for all the foregoing reasons, Plaintiff does not state a due process claim.

### C.  MDOC Policies

Plaintiff claims that Defendants Irby and Unknown Parties failed to comply with MDOC policies. An alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Consequently Plaintiff does not state a cognizable § 1983 claim against Defendants for their failure to comply with MDOC policies.

### D.  Access to the Courts

Plaintiff's contention that the unknown corrections officers prevented him from sharing documents with his attorney in connection with possible state habeas proceedings arguably

implicates his right of access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right prohibits prison officials from erecting barriers that may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992). In order to state a viable claim for interference with his access to the courts, however, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that Defendants have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). He must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005); *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

Plaintiff does not allege that he suffered any injury as a result of Defendants' actions. He does not contend, for instance, that he missed a filing deadline or lost an opportunity to pursue a claim. Consequently, he does not state an access to the courts claim.

II. <u>Immunity</u>

Plaintiff seeks damages from Defendants Smith, King, and Bonito and sues them in their official capacities. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the Michigan Department of Corrections. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*,

35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from suit for monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989). Thus, Defendants Smith, King, and Bonito are subject to dismissal for the additional reason that, because they are sued in their official capacities, they are immune from Plaintiff's damages claim.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim and/or on grounds of immunity pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: September 18, 2013          /s/ Janet T. Neff
                                   Janet T. Neff
                                   United States District Judge